**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE: GARY M. BOWMAN, ESQ.,** | ) ) ) | **MISCELLANEOUS PROCEEDING** |
| **Respondent** | ) ) | **NO. 07-00701** |

## <u>MEMORANDUM OPINION</u>

The matter before the Court is the Respondent's Motion Requesting Recusal of the undersigned judge from hearing the Show Cause Order which he initiated concerning the Respondent. Said Motion has not been noticed by the Respondent for a hearing; neither has he requested any hearing thereon. For the reasons noted hereafter, such Motion will be denied, but because the Show Cause Order relates to what the undersigned judge perceives as a pattern of conduct on the Respondent's part of filing in this Court pleadings which are misleading and/or do not have a sufficient legal and/or factual basis supporting them, I have decided that the ends of justice will be served by some special steps to assure that the determination of such Order is one which reflects the collective opinion of all of the current judges of this Court. Accordingly, the Court intends to request the active participation of the other judges of this Court so that any hearing upon such Show Cause Order and any proposed substantive disposition thereof will be jointly heard and collectively determined by the three current judges of this Court.

The asserted grounds for the recusal motion, pursuant to 28 U.S.C. § 455(a) and (b)(1), may be summarized as follows: The Respondent asserts that the undersigned judge has a "personal bias or prejudice" concerning him and "personal knowledge of disputed evidentiary facts" that are not evident in the Order. In support of his position, the Respondent relies on the undersigned judge's August 28, 2007 letter to the Respondent stating that he issued the Show

Cause Order because he had previously "attempted to effect" a "course correction" and that the

Respondent's statements indicated that he believed "the problem is with my attitude and not your

own approach to representing your clients." The Respondent asserts that the evidentiary facts

supporting the course correction and alleged statements are not recited in the Order and are

within the personal knowledge of the undersigned. The Respondent further asserts that the

undersigned judge is biased or prejudiced against him as a result of the undersigned's

representation, prior to appointment to the bench, of a defendant in a case where the Respondent

represented the plaintiff, noting that the undersigned judge "disagreed" with the plaintiff's

position and "told the Court that he thought I was not serious when he first read my argument."

The Respondent states that he believes that the undersigned judge formed the opinion at that time

that the Respondent does not take his responsibility as an officer of the Court seriously. The

Respondent also cites the case of Aubrey Manis Hicks in support of this position indicating that

the undersigned judge considered imposing a sanction upon him, stating he thought the

Respondent was playing "fast and loose," when he had only assumed his duties as a judge two

and a half weeks earlier. The Respondent also cites the case of William St. Jacques, in which the

undersigned judge issued a show cause order pursuant to Rule 9011 regarding the allegation that

the Western District of Virginia was the proper venue for this case. While the undersigned did

not sanction the Respondent in either of those two cases, the Respondent asserts that the

reference to his conduct in these cases suggests that the undersigned has a "personal animus"

against him and continues to "harbor a grudge" against him. The Respondent also states that the

undersigned judge's statement that he attempted to effect a course correction is inaccurate and

that the Respondent did not receive any communication from the undersigned in which he sought

2

to correct a course of action. The Respondent asserts that the undersigned judge has a "pre-conceived" set of beliefs that he plays "fast and loose" and that he should correct his course that would prejudice the undersigned in fashioning a remedy to the asserted pattern of misconduct. The Respondent further states that he does not know what statements the undersigned finds objectionable or that demonstrate his belief that the problem is with the court's attitude. Finally, the Respondent asserts that the issuance of the Show Cause Order itself indicates that it was filed for a purpose not contemplated by Rule 9011 as the Order was filed four days prior to the beginning of the Respondent's military duty where the Respondent would be gone for more than a year; thus, the purpose of deterring frivolous filings was not served. The Respondent states that this demonstrates a prejudice toward him personally and that the undersigned's judgment regarding the Respondent is "clouded." Finally, the Respondent states that fairness requires that the Show Cause Order be assigned to another judge whose judgment is not influenced by factors outside of the facts stated in the Order itself and asks that the undersigned recuse himself from consideration of the Order.

## DISCUSSION OF RESPONDENT'S CONTENTIONS

The Court will discuss the specific incidents recited by the Respondent in his Motion in chronological order and then attempt to deal with them in their entirety. Because the Motion alleges that the undersigned judge has a personal animus towards the Respondent, where appropriate the opinion will utilize first person pronouns. The first of these events relates to my representation, prior to my appointment to the bench of this Court, of the mortgagee in a dispute with clients of Mr. Bowman with respect to the bankruptcy case of *In re Robert M. Kelley, Jr.*

*and Ruth Ann C. Kelley*, No. 6-97-00025-11, before Judge William E. Anderson of this Court.
The Court has retrieved the files of both the Kelleys' bankruptcy case and the adversary
proceeding they filed against the mortgagee, First Federal Savings and Loan Association of
Martinsville, having adversary proceeding number 6-97-00049. In that adversary proceeding Mr.
Bowman made the contention on behalf of his clients that the Association, which had agreed not
to exercise its "due on sale or conveyance" clause in the deed of trust securing its loan when its
original borrowers conveyed the property to the Kelleys upon their agreement to make the
payments due on the loan, should have made new "truth in lending" disclosures to the Kelleys
even though no change was being made to the original terms and conditions of the loan. Mr.
Bowman took the unusual step, unprecedented in my personal experience, of filing a motion for
summary judgment along with his complaint and noticing the same for a hearing even though
such action was contrary to the express provisions of Bankruptcy Rule 7056. A review of the
adversary proceeding file indicates that Mr. Bowman did not file any brief in support of his own
motion for summary judgment or opposing the Association's own motion for summary
judgment, which was accompanied by a supporting brief. The adversary proceeding file further
indicates that when the parties appeared at the hearing, they all agreed that the Association's
position was correct and an agreed order to such effect was entered by the Court. A copy of the
order entered by the Court is attached as an exhibit to this Opinion. The adversary proceeding
did not concern the same issue raised by Mr. Bowman in the *Hicks* case, discussed below, as he
contends in his Motion to Recuse. It is possible that he may have made such an argument in
proceedings on a relief from stay motion filed in the underlying bankruptcy case, but such
argument is not mentioned in the court file of the case. The bankruptcy case file does indicate

4

that Mr. Bowman did file an objection to the proof of claim filed on behalf of the Association on

the ground that its denial in a separate pleading that the debtors had "assumed the loan within the

meaning of Regulation Z and the Truth in Lending Act" meant that it had no claim in the

bankruptcy case within the meaning of 11 U.S.C. § 1001(5). This objection was overruled by the

Court. A copy of the agreed order to such effect entered by the Court is attached as an exhibit to

this Opinion. Why Mr. Bowman believes that I would be "biased" against him for raising

unsuccessful contentions (the principal one of which he ultimately agreed was incorrect) against

a client of mine is not clear, but such was and is not the case, whatever his opinion may be. Such

a reaction might well have been the case if my client had lost some right by reason of what might

have appeared to me to be the result of some fraud or other deceit by opposing counsel, but that

certainly was not presented in the *Kelley* case. I have no recollection of saying that I didn't think

Mr. Bowman was serious in his argument. The files do not reflect any such statement but they

do not contain a transcript of any hearing. They do contain two instances in pleadings where I

used the word "frivolous." The first of these was contained in the Association's Response to Mr.

Bowman's summary judgment motion in the adversary proceeding, following an initial

paragraph pointing out that the filing of such a motion contemporaneously with the filing of the

complaint was contrary to the explicit provisions of Bankruptcy Rule 7056, and states as follows:

> The filing of a Motion for Summary Judgment before the Defendant
> has even made any Answer to the Complaint is both frivolous and
> improper on its face and should be treated accordingly by this Court.

The second was contained in paragraph # 9 of the Motion for Relief from the Automatic Stay

which I filed on behalf of the Association, which states as follows:

5

> Although the rate of interest applicable to First Federal's loan to Paul Kilby, Sr. and Christine W. Kilby was 9.75% per annum, and required monthly payments of $1,422.78 per month, the proposed Plan of Reorganization filed by the Defendant-Debtors herein is frivolous because the monthly payment to First Federal called for in said Plan is less than the amount of currently accruing interest upon the principal balance. Furthermore, the Plan seeks to modify the terms of the obligation to First Federal without its consent upon a loan secured by a First Deed of Trust upon the Debtors' principal residence which is expressly prohibited by the provisions of Bankruptcy Code § 1123(b)(5). Accordingly, the proposed Plan is clearly not confirmable.

While the word "frivolous" was not one I was accustomed to using in pleadings in a court to refer to pleadings filed or positions taken by an opponent, I see no basis even in retrospect to believe that its use in the two instances noted was inappropriate.

It is inevitable that one's impressions and opinions of another are formed in reaction to one's experiences over time with that individual. While my initial experience with Mr. Bowman occurred prior to my appointment to the bench of this Court and admittedly did not leave me with a very favorable impression of his representation of his clients in that case, there certainly was no personal discourtesy on his part to me or vice-versa and no basis for me to develop any animus to him and I did not do so. A poor opinion of another in some particular respect formed on the basis of good cause is not equivalent to a feeling of ill will or inclination to inflict discomfort or embarrassment upon that individual. To give Mr. Bowman his due, he did concede at the hearing on the competing summary judgment motions that the Association's position was correct and did not attempt to argue to the contrary at such hearing. That leaves open the questions of when he came to that conclusion, why he didn't communicate such conclusion prior to the hearing, and whether he filed the adversary proceeding with an

6

appreciation of its lack of merit.  Those questions are not relevant to the current proceeding or

the recusal motion because I did not come to any conclusions about them at that time or since

and his representation of the Kelleys played no part in my decision to issue the pending Show

Cause Order.  Neither is it a factor which I would weigh in determining any sanction following a

hearing upon the Show Cause Order.  My perceptions about another person, and I would think

this would be nearly universally true, are the cumulative result of my experiences with,

observations of, and other relevant knowledge, if any, gained about such individual.  While my

initial experience with Mr. Bowman before being appointed to the bench cannot be erased, the

important points are that such experience concerned his representation of clients in the

bankruptcy court, just as my subsequent experiences with Mr. Bowman have likewise concerned

his representation of other clients in the bankruptcy court, and that such initial experience was

clearly not of a kind that would reasonably be likely to create any personal feelings of spite or ill

will towards Mr. Bowman, nor did it.  The correctness of that statement may be suggested by the

fact that a recent review of the invited guest list for my investiture ceremony and reception, the

latter of which I personally hosted and paid for, on July 23, 1999, approximately two years after

the events in the Kelley bankruptcy case recounted above, included Mr. Bowman among a

number of other regular bankruptcy court practitioners.  My personal feelings and opinions

regarding Mr. Bowman are not influenced by other experiences with him apart from his practice

in the bankruptcy court.  Indeed, the most significant of what little additional information I have

about Mr. Bowman apart from his bankruptcy practice, namely, his active duty service in the

United States Army, is a fact which, if anything, would be likely to engender considerable

personal good will on my part to him.  I am sensible of having an opinion formed on the basis of

7

the totality of my experience with Mr. Bowman that his pleadings filed on a number of occasions in the bankruptcy court do not demonstrate adherence to certain professional standards expected by me of a member of the bar of this Court, which standards, simply stated, are contained in Bankruptcy Rule 9011(b).

My next involvement with Mr. Bowman which I can recall now was in connection with his representation of the debtor in the case of *In re Aubrey Manis Hicks*, No. 7-97-01405-HPR-13, which commenced before my appointment to the bench but carried over after that event. Mr. Hicks had purchased a home during a prior bankruptcy case from a Mr. Charles Carpenter, who had agreed to finance the purchase for him and had taken back a purchase money deed of trust to secure the balance of the purchase price. The debt was listed in Schedule D as undisputed and secured in the amount of $42,500. Mr. Carpenter did not file a proof of claim in the bankruptcy case, but Mr. Bowman on behalf of Mr. Hicks did file one for the mortgagee in the amount of $1,000. He then filed an adversary proceeding attempting to obtain a ruling that the deed of trust was either wholly void or void to the extent that it exceeded a debt of $1,000. I was admittedly incensed that an attorney admitted to the bar of the bankruptcy court would undertake such an extraordinary action as to file a proof of claim on behalf of a party not his own client which was so inconsistent with the facts represented in his own client's bankruptcy schedules, the like of which I had not seen before then and have not seen again since then in any proceedings before me in this Court. It is true that this occurred very shortly after my appointment to the bench and I make no apology for taking my responsibilities as a judge of this Court seriously from the very first day of my service and ever afterwards. It should be noted that this conduct was questioned in a letter to Mr. Bowman, rather than a show cause proceeding, and

8

was resolved with no formal action being initiated. It further should be noted that my decision

not to proceed with a show cause order was due not to approval of what he had done, but on the

facts that such conduct had occurred during the term of office of my immediate predecessor and

that apparently neither he nor opposing counsel had challenged such actions as being

professionally inappropriate. Mr. Bowman's procedural efforts to negate his client's mortgagee's

security were firmly rejected by the undersigned in an opinion entered on August 30, 1999, a

copy of which is annexed to this Opinion. The Court has no way of discerning Mr. Bowman's

state of mind regarding the legal merit and ethical propriety of his actions and contentions in the

*Hicks* case, but it does observe that he undertook no appeal to the decision unequivocally

rejecting them. While this episode did not create in me any personal "animus" to Mr. Bowman,

it was sufficient to raise a caution flag in my mind with respect to his perception and discharge of

his professional responsibilities other than single-minded devotion to the aims of his clients.

The next incident worthy of mention is the *In re William Matthew St. Jacques*

case, No. 7-00-00526-WSR-13, in which I did initiate a show cause proceeding against Mr.

Bowman with regard to his filing on behalf of a client a bankruptcy case in this Court although

the client had recently resided in and filed a prior bankruptcy case in Louisiana, which had been

dismissed shortly before the filing of the new case in this Court. Both the recent residence in

Louisiana and the bankruptcy case there were disclosed in the petition. I issued a show cause

order following a hearing on a turnover motion filed by the debtor with regard to a car which had

been repossessed. The Court had received a copy of the prior case dismissal order which made

clear that the Louisiana bankruptcy case had been dismissed pursuant to 11 U.S.C. § 109(g),

which precluded any new case within the next 180 days. That order of dismissal was entered

9

January 25, 2000. The new case filed by Mr. Bowman was filed the following month, specifically on February 23, 2000. The courtroom deputy's contemporaneous notes of the hearing on the turnover motion in the case file indicate that the issue of proper venue, including counsel's affirmative checking of the venue certification box in the petition, was raised at that hearing. Such notes also mention that the debtor had recently "moved" to Virginia, not that he had returned to it. The case was dismissed three days later on March 6, 2000. The show cause order was entered on April 6, 2000 and was sent to Mr. Bowman along with a cover letter dated April 6, 2000, a copy of which is in the case file, from the undersigned explaining why it had been issued in the following words: "My concern, frankly, is that in your efforts to obtain relief which your client wanted and in some sense needed, you failed to give sufficient regard to your professional responsibility as an officer of the Court." Unfortunately, the court reporter at the hearing at which Mr. Bowman appeared to respond to the show cause order no longer has her records of it and cannot now produce a transcript. Mr. Bowman apparently did not make any written response to the show cause order. At the conclusion of the hearing, the show cause was dismissed, but the dismissal order specifically recites that Mr. Bowman at such hearing acknowledged his awareness of his responsibility as an officer of the court. It might well be observed that the Court could have requested Mr. Bowman's explanation of such filing before initiating a show cause order proceeding, and perhaps that would have been the better course, but the incident is important to this proceeding and the recusal motion because it demonstrates that Mr. Bowman was on notice that his pleadings were under scrutiny with respect to their factual accuracy and legal merit, that the ultimate dismissal of the show cause after a brief hearing indicates that he did successfully "show cause" and that the undersigned had made no final

10

judgment before hearing his explanation of why he did not deserve to be sanctioned, and that the

dismissal order expressly mentioned his acknowledgment in open court of "his awareness of the

need to assure that the pleadings filed under his signature are appropriately grounded in fact and

with a reasonable legal basis therefore." That language simply expresses the professional

obligations of counsel set forth in Bankruptcy Rule 9011(b)(2) and (3).

The facts of the *In re Johnny L. and Elizabeth A. Greenway* case, Case No. 7-99-

03068-WSR-7, are already set forth in the Show Cause Order and need not be repeated here. The

particular facts relevant to the Respondent's recusal motion concern the filing by Mr. Bowman as

counsel for the Greenways on March 10, 2000 of a motion to convert their chapter 7 case to one

under chapter 13 so that the debtors could keep income tax refunds which they had already

agreed in an order[1] entered on January 13, 2000, to which Mr. Bowman had waived endorsement,

that they would turn over to the chapter 7 trustee, the filing by an experienced bankruptcy

attorney of a chapter 13 plan which on its face would barely pay enough even to pay the chapter

13 trustee's compensation and counsel's requested fee of $1,000, much less return to the

creditors any semblance of what they could reasonably have expected to receive in the chapter 7

case as was required by 11 U.S.C. § 1325(a)(4), and the renewed blunt expression by the Court

directly to Mr. Bowman of its concerns about the justification for filing pleadings which were

without even facial merit with the following words:

> THE COURT: Well, what I'm concerned about is you as an officer
> of this Court noticing a plan to creditors that you well know what is
> required as far as the debtor having signed the plan in the first place

---

[1] This order resolved an adversary proceeding (No. 7-99-00212) brought by Evelyn K.
Krippendorf, Esq., the chapter 7 trustee, to obtain a judicial declaration of the bankruptcy estate's
entitlement to such income tax refunds and an order compelling their turnover to by the debtors.

and then noticing the plan that on its face would not work.

MR. BOWMAN: Yes, sir.

THE COURT: I'm not sure what you perceive your responsibilities
as an officer of the Court to be, Mr. Bowman.

Mr. Bowman has asserted in his recusal motion that there are other unstated facts

of which the undersigned has knowledge regarding the desired "course correction" noted in the

Court's letter to Mr. Bowman. That desired "course correction" has been consistently a message

that Mr. Bowman not file pleadings in the bankruptcy court which do not have a reasonable legal

and factual basis supporting them and that he recognize that his duty to be a vigorous advocate

for his clients must be subordinate to his responsibilities as an officer of the Court. His

comments to the Court at the hearing on June 18, 2007 which are quoted in the footnote[2] below

and the Show Cause Order appear to indicate his rejection of that message and his intent to

continue to do "what the client wants." Those are the comments which, in the Court's view,

---

[2]

[T]he first answer I was going to say was what the client wants. But the second one,
what I would say is that this same complaint, the same form, which is a form on the
computer, the same form filed routinely with the other judges -- and I'm not -- this
is not as a criticism of you or anything. This is simply an answer to your question.
When this complaint was filed, I have never received any sort of questioning or
pushback or any kind of scrutiny from the other judges, and so I followed the same
practice. I understand in this particular instance or in other instances and, you know,
I try to give a wide berth to things that this Court -- that you may find offensive, but
this is precisely the relief that's granted by the other judges routinely. And I'm sorry
that you don't, and I don't mean to imply that you have to; I'm just saying I don't think
that it's quite right, just to be candid with you, for me to change the practice, to
second guess the practice, and to say to one client, well, I can't do what I would do
in another case in this case because I don't think the judge would grant it. I could say
that -- and it's certainly not pleasant for me to come up here and, you know, have
these conversations with you. On the other hand, it seems to me that people ought
to be treated the same, at least from my end, even if it's a little bit uncomfortable for
me to come up here and talk to you about this.

12

indicate the Respondent's apparent beliefs that his actions have been proper and that the claimed

acceptance of supposedly the same pleadings in comparable situations by other judges of this

Court demonstrate that the problem is with the undersigned judge's attitude, not his own

conduct.  It is my recollection that the substance of such comments had been previously

expressed by Mr. Bowman on at least one other occasion before me.  This current expression of

Mr. Bowman's mindset coupled with the most recent examples of pleadings filed which appear

to disregard the aforementioned responsibilities as an officer of the Court have prompted me to

conclude that milder efforts on my part have proved unavailing and that a more formal and

serious approach is required.  Other than as stated in the Show Cause Order or this Opinion, there

are no facts relevant to the desired "course correction" or my efforts to effect one on Mr.

Bowman's part of which I am aware.  I am not aware of any actual dispute on Mr. Bowman's

part about the existence of these facts.  If Mr. Bowman believes that there are others, certainly he

will be given the opportunity at any hearing upon the Show Cause Order to make his contentions

a part of the record of such hearing.

Finally, the Respondent asserts that the issuance of the Show Cause Order prior to

Mr. Bowman's reporting for active duty demonstrates both that it was unnecessary to deter

frivolous pleadings on his part because he was going to be on active military duty, and that such

timing is additional evidence of the Court's ill will towards him.  To provide a proper

background to a discussion of these assertions, it is helpful to review an exchange of letters

between the undersigned and the Respondent in the several weeks preceding the issuance of the

Show Cause Order.  This exchange is composed of Mr. Bowman's letters dated July 26, 2007

and August 20, 2007 and my letters to him dated July 31, 2007, August 16, 2007 and August 28,

13

2007, copies of all of which are attached as exhibits to this Opinion. As additional background it should be noted that Mr. Bowman during the last several years has been involved a number of times in active duty service with the Army which necessitated his absence from his office, but which nevertheless did not preclude him from continuing to file pleadings in this Court and otherwise handle existing bankruptcy cases. Accordingly, prior experience demonstrated that active military service was no guarantee that Mr. Bowman's practice before the Court would be in a state of complete dormancy. Perhaps the clearest evidence of prior experience being a good indication of what was likely to occur in the future is what actually transpired during and following this exchange of letters and the issuance of the Show Cause Order on August 29, 2007. Although Mr. Bowman's letter dated July 26, 2007 represented that he "was required to be on military duty from July 27 - August 11" and that he was "trying to wrap up my affairs," the records of the Clerk's Office of this court indicate that he is counsel of record in the case of *In re Gerald Wayne Palmer*, No. 07-71204, which was electronically filed with the Court on August 6, 2007 on the basis of schedules and declarations signed two days previously. Such records also indicate that Mr. Bowman is counsel of record in the case of *In re Sharon Marie Thompson*, No. 07-71334, filed on August 30, 2007, the day immediately following the issuance of the Show Cause Order on the basis of schedules and declarations signed the previous day. During the following week, specifically on September 5, 2007, a chapter 11 case, *In re Deerfield Estates, Inc.,* No. 07-71381, for which Mr. Bowman was counsel of record, was filed. The latter case contains an order entered on October 12, 2007 by Chief Judge Krumm of this Court and endorsed by Mr. Bowman as counsel for the Debtor granting *in rem* relief from the automatic stay to the debtor's mortgagee and which contains the following remarkable sentence: "The Court

14

specifically finds that the filing of the petition by the Debtor was part of a scheme to hinder,

delay and defraud creditors involving a transfer of ownership of the Property without the consent

of the Bank or court approval."

Mr. Bowman made no representation in his correspondence that he did not intend

to resume active practice in this Court upon conclusion of his current active duty service.

Accordingly, no good reason was presented for the Court to "sweep under the rug," so to speak,

its concerns about the matters addressed in the Show Cause Order. The Court's letters and the

provisions of the Show Cause Order make clear that the Court did consider appropriately his

military duty situation by providing him a period of thirty days in which to file a response, not

scheduling any hearing upon the Order, and assuring Mr. Bowman that any hearing ultimately

held would be scheduled with consideration of his situation. Upon the Respondent's request for

additional time to prepare a response to the Show Cause Order, an extension of an additional

month, the full length of time requested, was readily granted. While the Respondent's active

duty military service is praiseworthy, it does not provide an immunity against the Court's

discharge of its supervisory responsibilities regarding attorneys admitted to practice before it.

Finally, this correspondence contains a demonstration of Mr. Bowman's mindset that any change

in the manner of his practice before the Court would be limited to any cases before the

undersigned judge of this Court, not generally; in short, that he would attempt to placate my

sensibilities, not adopt the same standard of practice before all of the judges of the Court. I refer

specifically to the following sentence in Mr. Bowman's letter dated July 26, 2007: "I understand,

more than ever, your concern about me filing proceedings which *you consider objectionable* and

I will try my best to not file any pleadings *which you may consider objectionable* if I resume

15

practicing law *before you*." (emphasis added)

CONCLUSIONS OF LAW

Bankruptcy courts are statutorily designated as "a unit" of the federal district

courts and bankruptcy judges are declared to be "judicial officer[s]" of the district court by 28

U.S.C. § 151, which provides as follows:

> In each judicial district, the bankruptcy judges in regular active
> service shall constitute a unit of the district court to be known as the
> bankruptcy court for that district.  Each bankruptcy judge, as a
> judicial officer of the district court, may exercise the authority
> conferred under this chapter with respect to any action, suit, or
> proceeding and may preside alone and hold a regular or special
> session of the court, except as otherwise provided by law or by rule
> or order of the district court.

It is part of the inherent authority of bankruptcy judges as judicial officers of the United States

District Courts to regulate the practice of attorneys permitted to practice before them. *See* 11

U.S.C. § 105(a) and 2 *Collier on Bankruptcy* ¶ 105.04[7][b] at p. 84.4 - 84.6 (Alan N. Risnick &

Henry J. Sommer eds., 15th ed. rev. 2005).  *McGahren v. First Citizens Bank and Trust Co. (In*

*re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997), *cert. denied*, 522 U.S. 950, 118 S. Ct. 369 (1997)

("A federal court also possesses the inherent power to regulate litigants' behavior and to sanction

a litigant for bad-faith conduct.", citing and quoting from *In re Heck's Properties, Inc.*, 151 B.R.

739, 765 (S.D.W.Va. 1992) ("It is well-recognized, . . . quite apart from Rule 9011, that courts

have the inherent authority to impose sanctions upon counsel who is found to have acted in bad

faith, vexatiously, wantonly or for oppressive reasons.")) Furthermore, Federal Rule of

Bankruptcy Procedure 9011, which essentially carries over the provisions of Rule 11 of the

16

Federal Rules of Civil Procedure, explicitly sets forth the standards expected of attorneys filing

pleadings in bankruptcy courts as follows:

> By presenting to the court (whether by signing, filing,
> submitting, or later advocating) a petition, pleading, written motion,
> or other paper, an attorney or unrepresented party is certifying that to
> the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such
> as to harass or to cause unnecessary delay or needless increase in the
> cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein
> are warranted by existing law or by a nonfrivolous argument for the
> extension, modification, or reversal of existing law or the
> establishment of new law;
>
> (3) the allegations and other factual contentions have
> evidentiary support or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the
> evidence or, if specifically so identified, are reasonably based on a
> lack of information or belief.

Such standards can be enforced upon attorneys filing pleadings in the bankruptcy court either by

a motion by opposing counsel or upon the court's own initiative. Bankruptcy Rule 9011(c)(1).

Accordingly, bankruptcy judges have both inherent power and, indeed, responsibility to supervise

the practice of attorneys admitted to practice before them as well as the authority accorded by

Rule 9011. The pending Show Cause Order proceeding against the Respondent expressly relies

upon both inherent authority and Rule 9011.

As judicial officers of the district courts bankruptcy judges are subject to the

recusal provisions of 28 U.S.C. § 455, which states, in pertinent part, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall
> disqualify himself in any proceeding in which his impartiality might

17

reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Although the statute's application on its face to all "judge[s]" of the United States is clear,

Bankruptcy Rule 5004(a) expressly makes the statute applicable to bankruptcy court judges.

The grounds relied upon in the Motion Requesting Recusal are questionable

impartiality, personal bias or prejudice, and personal knowledge of disputed facts.

18

The Court can understand that Mr. Bowman might well doubt the undersigned's impartiality. After all, the undersigned has not only questioned on previous occasions the soundness of other pleadings he has filed in this Court, but also has gone to the considerable trouble of preparing an extensive Show Cause Order which challenges in detail the propriety of some very recent pleadings he has filed here. The fact that he may feel justified in questioning it, however, is not the deciding factor. It has been pointed out that it is not the purpose of § 455(a) to give the litigants a "veto" power over the judge hearing a particular case or matter, *Samuel v. University of Pittsburgh*, 395 F. Supp. 1275, 1277 (W.D. Pa. 1975), vacated on other grounds, 538 F.2d 991 (3d Cir. 1976), or to provide a preemptive tactic to use against an anticipated adverse ruling, *Conklin v. Warrington Township*, 476 F. Supp. 2d 458, 463 (M.D. Pa. 2007).

Section 455(a) was construed and applied by the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), which involved a case decided by a district judge in which Loyola University, of which he was a current member of its Board of Trustees, had a significant financial interest. At the time of the trial in question, the judge apparently had forgotten about such interest and did not disqualify himself. The losing party in the case was unaware of the judge's membership on the Board of Trustees until some months after the decision had been rendered. The Supreme Court quoted with approval the following passage from the decision below of the Court of Appeals for the Fifth Circuit:

> 'The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.'

19

486 U.S. at 860 (quoting *Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th

Cir. 1986)). The Supreme Court noted that both the District Court and the Court of Appeals

below "found an ample basis in the record for concluding that an objective observer would have

questioned" the original deciding judge's impartiality. *Id.* at 861. It affirmed the decision below

overturning the original decision due to the breach of § 455.

Six years later the Supreme Court returned to the proper interpretation and

application of § 455 in *Liteky v. United States*, 510 U.S. 540 (1994). The "short" holding of the

case is that "the 'extrajudicial source' doctrine, as we have described it, applies to § 455(a)." *Id.*

at 554. The Court's explication of that holding merits repeating here:

> As we have described it, however, there is not much doctrine to the
> doctrine. The fact that an opinion held by a judge derives from a
> source outside judicial proceedings is not a *necessary* condition for
> 'bias or prejudice' recusal, since pre-dispositions developed during
> the course of a trial will sometimes (albeit rarely) suffice. Nor is it a
> *sufficient* condition for 'bias or prejudice' recusal, since *some*
> opinions acquired outside the context of judicial proceedings (for
> example, the judge's view of the law acquired in scholarly reading)
> will *not* suffice. Since neither the presence of an extrajudicial source
> necessarily establishes bias, nor the absence of an extrajudicial source
> necessarily precludes bias, it would be better to speak of the existence
> of a significant (and often determinative) 'extrajudicial source' *factor*,
> than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence.
>
> The facts of the present case do not require us to describe the
> consequences of that factor in complete detail. It is enough for
> present purposes to say the following: First, judicial rulings alone
> almost never constitute a valid basis for a bias or partiality motion.
> See *United States v. Grinnell Corp.*, 384 U.S., at 583, 86 S.Ct. at
> 1710. In and of themselves (*i.e.*, apart from surrounding comments
> or accompanying opinion), they cannot possibly show reliance upon
> an extrajudicial source; and can only in the rarest circumstances
> evidence the degree of favoritism or antagonism required (as
> discussed below) when no extrajudicial source is involved. Almost
> invariably, they are proper grounds for appeal, not for recusal.

Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German-American defendants: 'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.' Id., at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Id.* at 554-56. Earlier in the opinion Justice Scalia speaking for the majority explained the proper understanding of the words "bias or prejudice" as follows:

The words connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate,* either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts). The 'extrajudicial source' doctrine is one application of this pejorativeness requirement to the terms 'bias' and 'prejudice' as they are used in § 144 and 455(b)(1) with specific reference to the work of judges.

*Id.* at 550.

A few sentences concerning the asserted ground of personal knowledge of disputed evidentiary facts are in order. Although there is little judicial authority applying this particular provision of 28 U.S.C. § 455, it seems reasonably clear that it relates to situations where some material issue of fact is in dispute and the judge has some personal knowledge of such issue, the consequence of which would be the judge making use of such personal knowledge and assessing his own credibility against that of another. In short, where the judge is in effect a witness to some material fact which is in dispute. It is not intended to preclude the judge from using knowledge which he has obtained in the course of exercise of his judicial duties. *See* 46 Am. Jur. 2d *Judges* §151 (1994). It is the responsibility of the individual or party filing a recusal motion to allege with some particularity what material facts are in dispute of which the judge is said to have some personal knowledge. When such a contention is made, it is the judge's responsibility to determine whether such asserted facts are both material and disputed with respect to the issue or issues before him or her.

A brief comment is appropriate concerning the unusual nature of a Rule 9011 show cause proceeding against counsel and its relationship to 28 U.S.C. § 455. Rule 9011(c)(1)(B) expressly provides for the commencement of such a proceeding upon the court's "own initiative." It is obvious that a court would have no basis to initiate such a proceeding unless it had already come to some opinion that such Rule appeared, at least, to have been violated by some pleading filed before it by the attorney respondent to the show cause order. In some sense the initiating judge serves in a quasi-grand jury capacity of finding probable cause to believe that some offense has been committed. Of course this is an imperfect analogy because an

22

attorney show cause proceeding, pursuant to Rule 9011 (or Rule 11 of the Federal Rules of Civil

Procedure) or the inherent authority of the court, is purely a civil matter, not a criminal

proceeding. Nevertheless, even in a civil matter there is the possibility of serious consequences.

In any event, the provisions of the Rule contemplate that the initiating judge will act in multiple

capacities in any proceeding pursuant to such Rule upon the court's own initiative: to make an

initial determination of "probable cause"; to draft and issue the show cause order; to "present"

the evidence and make a proper record of the proceeding; to conduct the hearing pursuant to the

order; to take account of all of the relevant evidence, including any defense or other explanation

made by the respondent, and determine whether such respondent has shown good cause that no

sanctionable pleading has been filed; and if a violation of Rule 9011 is satisfactorily established,

to determine what sanction or combination of sanctions is warranted.

It is an entirely understandable reaction on the part of one on the receiving end of

a show cause order, particularly one which asserts a course of conduct, to feel that the judge who

issued it has already formed an opinion about its merit and therefore a pre-disposition as to its

proper outcome. While the desire to want some other judge, indeed any other judge, to make the

factual findings and conclusions of law following a hearing upon the show cause order is

perfectly understandable, such a procedure is not provided for in the Rule. It is the implicit

assumption of the Rule that normally a judge will be capable of discharging the multiple

responsibilities accorded to him or her by such Rule, conducting a fair hearing, and reaching an

appropriate decision based on the facts and law of the matter. A reasonable analogy might be to

an athletic team coach, who ordinarily combines the roles of teacher and disciplinarian, and who

is responsible, when the necessity arises, to determine that some rule of the team has been

violated, decide what measure of discipline is warranted based on the seriousness of the violation and the player's past disciplinary history, and impose the discipline so determined, which in the most severe cases may range all the way to dismissal of the player from the team.

All of this is not to say, of course, that the initiating judge of a Rule 9011 show cause proceeding is immune from a recusal motion pursuant to 28 U.S.C. § 455. For example, if the judge has been sued personally by the respondent attorney, or if the judge and the attorney are former law or business partners whose prior relationship terminated in some highly antagonistic manner, or if the judge and the attorney had been bitter political adversaries for some coveted office, there might well be ample cause to believe that actual bias or prejudice might exist in their mutual feelings towards each other, or that a reasonable person would doubt that any human being having such a preexisting relationship with the respondent could be impartial when determining not only the propriety of some pleading(s) filed before him or her, but also the filing attorney's state of mind in doing so. In contrast, simply the respondent attorney's belief, even if sincerely held, that the judge's action in issuing the show cause order is unfair or misguided or that his judgment concerning the respondent is "clouded," is not sufficient to give merit to an unsupported recusal motion.

Applying these authorities and principles to the facts at hand, the Court concludes that the Motion Requesting Recusal ought to be denied for the following reasons:

1. No reasonable person would believe that a judge's impartiality towards an attorney with respect to a disciplinary issue would be compromised by the fact that such attorney had represented joint husband and wife debtors in a bankruptcy case more than ten years previously in a case where the judge prior to his appointment to the bench represented such debtors'

24

mortgagee and no evidence other than conflicting legal positions suggesting any indication of personal spite or ill will is alleged.

2. The facts (i) that the Respondent's contentions in such bankruptcy case may be a part of that totality of experience of the judge with the Respondent which have played some part in forming his opinion of the professional standards of such attorney, and (ii) that the judge is not introduced to the show cause order proceeding as a blank slate with no prior experience or slightest glimmer of an existing opinion, are no proper basis for the judge to recuse himself, even upon request, from the responsibility to hear, consider and properly determine such proceeding.

3. The expressions of concern by the undersigned to the Respondent about his responsibilities as an officer of this Court have been repeated on a number of occasions which are described in the Show Cause Order and this Opinion. No dispute about such expressions is shown to exist. The statements made by Mr. Bowman alluded to by the Court in its August 28, 2007 letter to the Respondent are quoted in the Show Cause Order and again in this Opinion. No dispute about the making of such statements has been alleged.

4. The facts that the undersigned has formed an opinion about what is expected of attorneys admitted to practice in the Bankruptcy Court, and that he has developed on the basis of experience with the Respondent a major concern about the latter's willingness to meet such expectation, establishes his responsibility to hear the show cause order which he has initiated, not good cause for him to recuse himself from such responsibility. If the undersigned's expectations are mistaken, which results in an unjustified sanction by the Court against the Respondent, that is properly a ground for appeal, not recusal.

25

5. While the fact of the Respondent's active military duty service is one which should receive deference by this Court with respect to ample time being provided to him to file pleadings or respond to correspondence from the Court and with respect to the scheduling of any hearing upon the Show Cause Order, it is no reason to dismiss the Show Cause Order or otherwise serve as a counsel protection program against being held to account for any alleged failure to uphold the responsibilities assumed by an attorney by practicing law in this Court.

6. Other than the Respondent's unsupported contentions that his pleadings are not challenged by other judges of this Court, he has not made any demonstration that the expectations expressed by the undersigned are inconsistent with what is required of him, and indeed all attorneys admitted to practice in the bankruptcy court, by Rule 9011(b) and the Code of Professional Responsibility. Accordingly, there has been no showing that any opinions developed by the undersigned as a result of a series of the Respondent's pleadings filed in this Court are, in the words of Justice Scalia in *Liteky, supra,* "wrongful or inappropriate." Indeed, the Respondent himself admits that the specific recent pleadings which are the subject of the Show Cause Order do violate Rule 9011(b).

7. Although the Respondent's Motion Requesting Recusal attempts to turn the tables and put the undersigned judge's judgment on trial rather than his own conduct, it fails to state the obvious that he has been previously held by this Court to have filed a sanctionable pleading in violation of Rule 9011(b) and that such determination was made not by the undersigned, but by Chief Judge Krumm of this Court prior to the undersigned's appointment to the bench. The undersigned judge has yet to determine and impose any sanction at all upon the Respondent. My previously expressed criticism of the Respondent as described in this Opinion and the Show

26

Cause Order, while no doubt unwelcome by him, has sought to modify his professional conduct in this court by exhortations, not punitive measures. Such efforts to obtain voluntary and heartfelt compliance with Rule 9011(b) are not cause to challenge the undersigned's impartiality or to believe that he has some personal spite against the Respondent which he is attempting to satisfy by means of the pending Show Cause Order.

8. In light of the contentions raised by the Respondent and the importance to the bankruptcy bar generally of a clear expression of the Court's expectations of the professional standards of counsel appearing before any of its judges, I conclude that the ends of justice will be served by inviting the other sitting judges of this Court to participate in any hearing of the Show Cause Order and any substantive ruling thereon and I intend to do that.

By a separate order the Court will deny the Motion Requesting Recusal on the basis of the foregoing analysis and reasoning.

This 20th day of December, 2007.

William F. Stone, Jr.

UNITED STATES BANKRUPTCY JUDGE