**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: GARY M. BOWMAN, ESQ., | ) | |
| | ) | **MISCELLANEOUS PROCEEDING** |
| Respondent. | ) | **NO. 07-00701** |
| | ) | |

_____

**MEMORANDUM OPINION**

The matter before the Court is the Show Cause Order Pursuant to Bankruptcy Rule 9011 and Inherent Authority of Court to Discipline Attorneys Admitted to Practice Before It entered August 29, 2007 concerning the Respondent, Gary M. Bowman, Esquire.  On October 31, 2007, the Respondent filed both a Motion Requesting Recusal of Judge William F. Stone, Jr. and a Response to the Show Cause Order.  In the December 20, 2007 Memorandum Opinion and Order denying the Motion Requesting Recusal, the Court concluded that the ends of justice would be served by inviting the other sitting judges of this Court to participate in any hearing of the Show Cause Order and any substantive ruling thereon, which they have agreed to do.  In his letter dated January 22, 2008 to Judge William F. Stone, Jr., the Respondent agreed that the three judges of this Court could resolve this matter without a formal hearing.  The matter is now ready for decision.  For the reasons more fully discussed below, the Court finds that Gary M. Bowman, Esq. has filed pleadings in this Court which violated the standards contained in Federal Bankruptcy Rule 9011(b) as more particularly specified in the aforesaid Show Cause Order and were inconsistent with his responsibilities as a member of the bar of this Court for which he ought to be sanctioned.

FINDINGS OF FACT

Pleadings filed in two bankruptcy cases, *In re Kim Perkins*, No. 7-01-04818-WSR-13 and *In re Michael and Sandra Bousman,* No. 99-01086, form the basis for the issuance of the Show Cause Order against the Respondent.  As set forth more fully in the Show Cause Order, in the case of Kim Perkins, Mr. Bowman filed a "Third Amended Chapter 13 Plan," dated November 6, 2002, which provided as follows with respect to a mortgage loan held by First Union National Bank:

> The monthly payment of $ 341.54 to First Union National Bank shall be the only payment due by the debtor relating to the 823 8th Street property during the plan period, notwithstanding any other agreement or order.
> To the extent that any First Union mortgage is not fully satisfied by the payments made by this debtor during the plan period, first union [sic] shall retain its lien upon such property after the debtor receives his discharge.

This Plan was confirmed by this Court by its Order entered January 23, 2003.  Under this Plan Mr. Perkins was to make monthly payments of $341.54 directly to the mortgagee for a period of sixty months upon an indebtedness represented to be $34,100.  Even disregarding entirely the interest component of a monthly mortgage payment, the total amount payable to First Union with respect to this mortgage during the term of the Plan would be $20,492.40 ($341.54 x 60), $13,607.60 less than the beginning balance according to the Plan provisions.  The debtor subsequently completed the confirmed Plan and received a discharge from the Court on December 21, 2006.

On March 14, 2007 Mr. Bowman filed on behalf of Mr. Perkins an adversary proceeding against Wachovia Bank, N.A., successor to First Union National Bank, seeking a determination that the mortgage loan had been satisfied under the terms of the Plan and that the

2

mortgagee should be compelled to release said deed of trust of record.  As the factual and legal

basis for such relief, Mr. Bowman, on behalf of Mr. Perkins, alleged the following:

> The plan provided for payment of the mortgage on the property as follows: the debtor would pay "341.54" each month, "for a period of 60 months," until a total of $34,100.00 was paid to Wachovia. . . . First Union did not file a proof of claim relating to the debt secured by its lien on the property. . . . The Court confirmed the debtor's Chapter 13 plan on January 23, 2003.  The debtor made all of the required payments under his plan and received a discharge of debts on December 21, 2006. . . . GMAC [sic] has failed to release the lien on the property and claims that an outstanding balance of approximately $6700.00 is due on the debt secured by the property. . . . The confirmed plan stated: "The monthly payment of $341.54 to First Union National Bank shall be the only payment due by the debtor relating to the 823 8th Street property during the plan period, notwithstanding any other agreement or order."  GMAC [sic] accepted the treatment stated in the confirmed plan, has accepted the payments under the plan, and, according to the debtor's calculations, the $34,100.00 debt has been paid and the lien on the property is satisfied and should be released pursuant to 11 U.S.C. § 1328.

Complaint ¶ 4-9.  While the Complaint quoted partially from the language of the confirmed Plan

to the effect that "[t]he monthly payment of $341.54 . . . shall be the only payment due by the

debtor relating to the 823 8th Street property during the plan period" and asserted that "according

to the debtor's calculations, the $34,100 debt has been paid," it failed to mention the

immediately following sentence of the Plan which provided that the bank would retain its lien to

the extent the mortgage debt was not satisfied in full by the payments made according to the

provisions of the Plan.

This adversary proceeding came on for a pre-trial conference before this Court on

June 18, 2007.  When the Court inquired of Mr. Bowman about the discrepancy between the

alleged content of the provisions of the Plan according to the Complaint and the actual

provisions of such Plan, he replied in part as follows:

3

[T]he first answer I was going to say was what the client wants.  But the second one, what I would say is that this same complaint, the same form, which is a form on the computer, the same form filed routinely with the other judges -- and I'm not -- this is not as a criticism of you or anything.  This is simply an answer to your question.  When this complaint was filed, I have never received any sort of questioning or pushback or any kind of scrutiny from the other judges, and so I followed the same practice.  I understand in this particular instance or in other instances and, you know, I try to give a wide berth to things that this Court -- that you may find offensive, but this is precisely the relief that's granted by the other judges routinely.  And I'm sorry that you don't, and I don't mean to imply that you have to; I'm just saying I don't think that it's quite right, just to be candid with you, for me to change the practice, to second guess the practice, and to say to one client, well, I can't do what I would do in another case in this case because I don't think the judge would grant it.  I could say that -- and it's certainly not pleasant for me to come up here and, you know, have these conversations with you.  On the other hand, it seems to me that people ought to be treated the same, at least from my end, even if it's a little bit uncomfortable for me to come up here and talk to you about this.[1]

Transcript of June 18, 2007 Hearing at pages 9-10.  On June 28, 2007, Mr. Bowman filed on

behalf of his client a Stipulation of Dismissal of Adversary Proceeding without prejudice, no

---

[1]The pending Show Cause Order specifically ordered Mr. Bowman to "file a detailed written response to the preceding allegations . . . including specifically but not limited to a recitation of all bankruptcy adversary proceedings, including respective docket numbers, to which he was referring at the pre-trial conference on June 18, 2007 in which other judges of this Court are claimed to have granted relief when this undersigned judge has questioned the propriety of such pleadings."  Despite such direction, Mr. Bowman failed to include a recitation of such adversary proceedings in his Response.  Instead, Mr. Bowman stated that he did not remember specific case names and numbers and cited only one case, *Hamlett v. Amsouth Bank* (*In re Hamlett*), 322 F.3d 342 (4th Cir. 2003), where a default judgment had been granted avoiding deed of trust liens on the ground of tardily filed proofs of claim, which judgment was later vacated on the motion of the bank and a new judgment order entered upholding such liens.  Both of these latter actions by this Court were upheld on appeal by the District Court and the Court of Appeals.  In *Hamlett* it appears that counsel did have an arguable, albeit unsuccessful, legal basis for contending that the liens ought to be avoided.  In the *Perkins* adversary proceeding which is in issue here, he has admitted and the Court finds that he had no such reasonably arguable legal basis for the relief sought in that proceeding.

responsive pleading having been filed by the defendant.

   In the *Bousman* case, Mr. Bowman filed a Motion to Re-Open his clients'
bankruptcy case for the purpose of allowing the debtors to "bring a motion to avoid judgment
lien arising from a judgment obtained against the debtors by Central Fidelity Bank **while they
were debtors in this case**." (emphasis added)   Such Motion was granted by this Court's Order
entered January 23, 2007.  Mr. Bowman then filed an adversary proceeding against Wachovia
Bank, seeking to avoid a judgment lien obtained by such bank's predecessor, Central Fidelity
National Bank, on the ground that said judgment lien was "void" as having been obtained within
the ninety day period preceding not the re-opened case, but a prior case which had been filed in
1997 and been dismissed prior to the filing of the 1999 petition.  By its letter dated April 12,
2007, directed to Mr. Bowman, the Court sought an explanation from him about the adversary
proceeding because the judgment lien in question had not been obtained within ninety days prior
to the subject bankruptcy case, but before a prior case, Case No. 97-03571, which had been
dismissed.  At the pre-trial conference held on June 18, 2007 Mr. Bowman appeared and
admitted that, on the basis of the allegations contained in the Complaint, it was without merit,
but requested that the conference be continued to allow him the opportunity to try and persuade
Chief Judge Krumm to "consolidate" the dismissed 1997 case with the re-opened 1999 case,
which he claimed that he had requested Chief Judge Krumm to do previously in other cases
involving different circumstances. (Tr. 7)  He did in fact file a motion before Chief Judge
Krumm seeking such relief, which was unsuccessful.  On July 18, 2007, Mr. Bowman filed a
Stipulation of Dismissal of Adversary Proceeding with prejudice on behalf of the debtors on the
ground that the dispute had been settled, no responsive pleading by the defendant ever having

5

been filed.  On July 20, 2007, a Corrected Stipulation of Dismissal of Adversary Proceeding to

the same effect was filed to correct at one place the names of the debtors.  In the underlying

bankruptcy case the Bousmans listed in Schedule A "House and land in Botetourt Co." as having

a fair market value of $56,000, subject to two liens in the aggregate total amount of $39,437,

leaving apparent equity in an amount exceeding $16,000.  No portion of such equity was claimed

as exempt in Schedule C.  Although such equity meant that Central Fidelity's judgment lien was

secured, such judgment was not disclosed in Schedule D accompanying the bankruptcy petition.

The debtors' chapter 13 Plan made no provision for the Central Fidelity judgment lien.  The

bankruptcy case claim file does not indicate that any proof of claim was filed with respect to the

Central Fidelity judgment.

In the case of *In re Aubrey Manis Hicks*, No. 7-97-01405-HPR-13, Mr. Hicks had

purchased a home during a prior bankruptcy case from a Mr. Charles Carpenter, who had agreed

to finance the purchase for him and had taken back a purchase money deed of trust to secure the

balance of the purchase price.  The debt was listed in Schedule D as undisputed and secured in

the amount of $42,500.  Mr. Carpenter did not file a proof of claim in the bankruptcy case, but

Mr. Bowman on behalf of Mr. Hicks did file one for the mortgagee in the amount of $1,000.  He

then filed an adversary proceeding attempting to obtain a ruling that the deed of trust was either

wholly void or void to the extent that it exceeded a debt of $1,000.  In the complaint, Mr.

Bowman quoted a portion of the language in 11 U.S.C. § 1327(c) to the effect that unless

otherwise provided in the plan or order confirming the plan, the "property vesting in the debtor

under subsection (b) 'is free and clear of any claim or interest of any creditor'" but left out the

immediately following words "provided for by the plan" when the plan had made no provision

6

for such creditor, a residential mortgagee.  Mr. Bowman's procedural efforts to negate his

client's mortgagee's security were rejected by Judge Stone in an opinion entered on August 30,

1999, to which no appeal was taken.

In the *case of In re William Matthew St. Jacques*,  No. 7-00-00526-WSR-13,  a

show cause proceeding was instituted by the Court against Mr. Bowman with regard to his filing

on behalf of a client a bankruptcy case in this Court although the client had recently resided in

and filed a prior bankruptcy case in Louisiana, which had been dismissed shortly before the

filing of the new case in this Court.  Both the recent residence in Louisiana and the bankruptcy

case there were disclosed in the petition.  The Court had received a copy of the prior case

dismissal order which made clear that the Louisiana bankruptcy case had been dismissed

pursuant to 11 U.S.C. § 109(g), which precluded any new case within the next 180 days.  That

order of dismissal was entered January 25, 2000.  The new case filed by Mr. Bowman was filed

the following month, specifically on February 23, 2000.  The show cause order was entered on

April 6, 2000 and was sent to Mr. Bowman along with a cover letter from Judge Stone dated

April 6, 2000, a copy of which is in the case file, explaining the reason for its issuance in the

following words:  "My concern, frankly, is that in your efforts to obtain relief which your client

wanted and in some sense needed, you failed to give sufficient regard to your professional

responsibility as an officer of the Court."  Unfortunately, the court reporter at the hearing at

which Mr. Bowman appeared to respond to the show cause order no longer has her records of it

and cannot now produce a transcript.  Mr. Bowman did not make any written response to the

show cause order, but he did appear at the hearing and represented that the client had lived in the

Roanoke area before moving to Louisiana and then returning to Roanoke.  At the conclusion of

7

the hearing, the show cause was dismissed, but the dismissal order specifically recites that Mr.

Bowman at such hearing acknowledged "his awareness of the need to assure that the pleadings

filed under his signature are appropriately grounded in fact and with a  reasonable legal basis

therefore."

       The facts of the *In re Johnny L. and Elizabeth A. Greenway* case, No. 7-99-

03068-WSR-7, are already set forth in the Show Cause Order and need not be repeated here.

The particular facts relevant to this Opinion immediately follow.  Mr. Bowman, as counsel for

the Greenways, on March 10, 2000 filed a motion to convert their chapter 7 case to one under

chapter 13 so that the debtors could keep income tax refunds which they had already agreed in

an order[2] entered on January 13, 2000, to which Mr. Bowman had waived endorsement, that they

would turn over to the chapter 7 trustee.  He then filed a chapter 13 plan which on its face would

barely pay enough even to pay the chapter 13 trustee's compensation and counsel's requested fee

of $1,000, much less return to the creditors any semblance of what they could reasonably have

expected to receive in the chapter 7 case if the tax refunds had been turned over to the chapter 7

trustee, which would be necessary under 11 U.S.C. § 1325(a)(4) for the plan to be confirmed,

and the renewed blunt expression by the Court directly to Mr. Bowman of its concerns about the

justification for filing pleadings which were without even facial merit with the following words:

---

[2] This order resolved an adversary proceeding (No. 7-99-00212) brought by Evelyn K.
Krippendorf, Esq., the chapter 7 trustee, to obtain a judicial declaration of the bankruptcy
estate's entitlement to such income tax refunds and an order compelling their turnover to by the
debtors.

THE COURT: Well, what I'm concerned about is you as an officer
of this Court noticing a plan to creditors that you well know what is
required as far as the debtor having signed the plan in the first place
and then noticing the plan that on its face would not work.

MR. BOWMAN: Yes, sir.

THE COURT: I'm not sure what you perceive your responsibilities
as an officer of the Court to be, Mr. Bowman.

In his Response to the present Show Cause Order, Mr. Bowman admits that the

pleadings he filed in the *Perkins* and *Bousman* cases which are the subject of the Show Cause

did violate Rule 9011(b), but that such violations were the result of time pressures associated

with his military service and carelessness, and that such pleadings were not filed for any

improper purpose.  Mr. Bowman admits that he violated Rule 9011(b)(2) and (3) because "the

pleadings at issue contain statements which were not supported by the evidence and claims for

relief which were not legally justified, given the current posture of the cases at the time."  Mr.

Bowman further asserts that his conduct in the *Bousman* and *Perkins* cases is not similar to his

conduct in the *Hicks, St. Jacques* or *Greenway* cases and that his acts do not constitute a pattern

of conduct, but are separate incidents, isolated in time over more then a ten year period.

Therefore, Mr. Bowman asserts that he should not be barred from practicing before this Court.

Mr. Bowman was admitted as a member of the bar of this Court on October 25, 1989.  Since that

time he has regularly appeared in this Court and is an experienced practitioner of bankruptcy

law.  In his response, Mr. Bowman asserts that he has represented debtors in over two thousand

bankruptcy

9

cases and has only been sanctioned by the Court under Rule 9011 once in all that time.[3]  He also

asserts that he should not be barred from practicing before this Court because the challenged

pleadings were voluntarily withdrawn prior to the filing of the sanctions motion.  Instead, Mr.

Bowman asserts that the appropriate sanction is an order finding that Rule 9011 was violated,

directing him to conform to the Court's expectations and imposing a period of probation for one

year.

       The pleadings which are the basis of this show cause were filed during a time

when counsel was home during a time of active military service.  Mr. Bowman admits that such

pleadings were filed "in a rush on the day prior to leaving for military duty."  (Response p. 49).

In his letter to Judge Stone dated July 26, 2007, written after he began to suspect that the Court

was considering taking some action against him following the June pre-trial conferences in the

*Perkins* and *Bousman* cases, Mr. Bowman represented that he "was required to be on military

duty from July 27 - August 11" and that he was "trying to wrap up my affairs."  However, the

records of the Clerk's Office of this court indicate that Mr. Bowman electronically filed a

Chapter 7 petition in the case of *In re Gerald Wayne Palmer*, No. 07-71204, on August 6, 2007

---

[3]  On March 18, 1996, Judge Krumm issued an Order pursuant to Bankruptcy Rule 9011 directed to Mr. Bowman in connection with the case of *Kevin and Tina Collins*, No. 7-95-03451-7, requiring him to appear and Show Cause why sanctions should not be imposed upon him.  As a result of a hearing held on April 15, 1996 upon such Order, Judge Krumm determined that Mr. Bowman had filed a Motion for Reconsideration which violated the provisions of such Rule.  By Order entered June 12, 1996, Judge Krumm imposed a sanction requiring that Mr. Bowman prepare and deliver to the Clerk a letter apologizing for certain statements made in such pleading, which Mr. Bowman accepted and delivered such letter dated June 18, 1996 wherein he apologized to the Clerk of the Court for certain "false statements" made in the Motion for Reconsideration.

on the basis of schedules and declarations signed two days previously.  Such records also

indicate that Mr. Bowman electronically filed a petition in the case of *In re Sharon Marie*

*Thompson*, No. 07-71334, on August 30, 2007, the day immediately following the issuance of

the Show Cause Order on the basis of schedules and declarations signed the previous day.

During the following week, specifically on September 5, 2007, a chapter 11 case, *In re Deerfield*

*Estates, Inc.,* No. 07-71381, for which Mr. Bowman was counsel of record, was also filed.  The

records of the Clerk's Office also indicate that Mr. Bowman, as counsel for the debtors, filed

four Chapter 7 petitions between September and October, 2007:   *In re Douglas E. Dooley,* No.

07-71397, on September 10, 2007; *In re Perianne Lea Wright*, No. 07-71580, on October 12,

2007; *In re Edward G. Whitman*, No. 07-71638, on October 22, 2007; and *In re Rodney and*

*Connie Shepherd*, No. 07-71718, on October 31, 2007.  Additionally, Mr. Bowman, on behalf of

the trustee, filed a Motion to Approve Settlement and Notice of Hearing in *McLean v. Erie Ins.*

*Exchange (In re Zielenski),* A.P. No. 05-07110, on November 12, 2007.

   The Court need not make extensive factual findings about Mr. Bowman's state of

mind with respect to the recent pleadings which serve as the basis for the issuance of the Show

Cause Order.  He admits that such pleadings failed to meet the standards set by Bankruptcy Rule

9011(b), but disputes that they were filed for an improper purpose.  In light of the disposition we

determine to be appropriate under the circumstances presented here, we choose not to sift all

relevant evidence in an effort  to determine whether the Respondent consciously decided to file

misleading and unsupported pleadings or that he recklessly did so without giving full

consideration to what he was doing or that in his own mind he convinced himself that he was

simply being a vigorous advocate on behalf of his clients and that it was the responsibility of

other parties affected by his efforts to object to them if they believed themselves to be

prejudiced.  At the very least he can be charged with a negligent, although reckless seems much

closer to the correct characterization, indifference or blindness to his responsibilities under Rule

9011(b) and the Court believes that it need not go beyond that, believing that a full evidentiary

hearing would be the appropriate procedure to make any more damaging determination of his

intent.  This Opinion includes findings related to events predating the pleadings in the *Perkins*

and *Bousman* adversary proceedings, however, because they demonstrate not only prior

warnings from judges of this Court to Mr. Bowman about concerns over his understanding of his

responsibilities as an officer of the Court, but also a continuing pattern of filings pleadings

subject to fair criticism for being misleading (*e.g.*, *Collins, Hicks* and *Bousman*) or simply

lacking any reasonably arguable legal  merit.


CONCLUSIONS OF LAW

Bankruptcy courts are statutorily designated as "a unit" of the federal district

courts and bankruptcy judges are declared to be "judicial officer[s]" of the district court by 28

U.S.C. § 151, which provides as follows:


> In each judicial district, the bankruptcy judges in regular active
> service shall constitute a unit of the district court to be known as the
> bankruptcy court for that district.  Each bankruptcy judge, as a
> judicial officer of the district court, may exercise the authority
> conferred under this chapter with respect to any action, suit, or
> proceeding and may preside alone and hold a regular or special
> session of the court, except as otherwise provided by law or by rule
> or order of the district court.

It is part of the inherent authority of bankruptcy judges as judicial officers of the United States District Courts to regulate the practice of attorneys permitted to practice before them. *See* 11 U.S.C. § 105(a) and 2 *Collier on Bankruptcy* ¶ 105.04[7][b] at p. 84.4 - 84.6 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005). *McGahren v. First Citizens Bank and Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997), *cert. denied*, 522 U.S. 950, 118 S. Ct. 369 (1997) ("A federal court also possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct.", citing and quoting from *In re Heck's Properties, Inc.*, 151 B.R. 739, 765 (S.D.W.Va. 1992) ("It is well-recognized, . . . quite apart from Rule 9011, that courts have the inherent authority to impose sanctions upon counsel who is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons.")) Furthermore, Federal Rule of Bankruptcy Procedure 9011, which essentially carries over the provisions of Rule 11 of the Federal Rules of Civil Procedure, explicitly sets forth the standards expected of attorneys filing pleadings in bankruptcy courts as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the

13

> evidence or, if specifically so identified, are reasonably based on a
> lack of information or belief.

Bankruptcy Rule 9011(b).  Such standards can be enforced upon attorneys filing pleadings in the

bankruptcy court either by a motion by opposing counsel or upon the court's own initiative.

Bankruptcy Rule 9011(c)(1).  Voluntary withdrawal of an offending pleading can be a defense to

a sanctions motion filed by an opposing party, but not to a show cause order initiated by the

Court.  Rule 9011(c)(1)(B).  Accordingly, bankruptcy judges have both inherent power and,

indeed, responsibility to supervise the practice of attorneys admitted to practice before them as

well as the authority accorded by Rule 9011.  The pending Show Cause Order proceeding

against the Respondent expressly relies upon both the Court's inherent authority and the specific

provisions of Rule 9011.

In deciding cases based on violations of Bankruptcy Rule 9011, courts may look

to cases that interpret Federal Rule of Civil Procedure 11.  *See Valley Nat'l Bank of Ariz. v.*

*Needler* (*In re Grantham Bros.*), 922 F.2d 1438, 1441 (9th Cir.1991).  In determining whether an

attorney violated Rule 11, the court must apply an objective standard of reasonableness rather

than assessing subjective intent.  *See Robeson Defense Comm. v. Britt (In re Kunstler)*, 914 F.2d

505, 514 (4th Cir.1990).   The court must derive the signer's purposes from objective evidence of

the signer's motive in filing the document. *Id.* at 518-19.  The court may consider circumstantial

facts that surround the filing as evidence of the signer's purpose.  *Id.* at 519.  Rule 11 defines the

term "improper purpose" to include factors "such as to harass or to cause unnecessary delay or

needless increase in the costs of litigation."  However, the factors mentioned in the Rule are not

exclusive.  *Id.* at 518.  "Repeated filings, the outrageous nature of the claims made, or a signer's

experience in a particular area of law, under which baseless claims have been made, are all

appropriate indicators of an improper purpose." *Id.* at 519. *See also In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997), *cert. denied,* 522 U.S. 950 (1997) ("Baseless allegations also indicate an improper purpose."); *In re Johnson*, 2008 WL 183342 (Bankr. E.D. Va. 2008) (attorney, who became a willing and active participant in a scheme to hinder and delay creditors by filing a chapter 13 petition on behalf of an eighteen year old girl without a job who was conveyed rental property by her father and grandmother a few days prior to the petition filing, suspended from practice from bankruptcy court for a minimum period of 120 days).

An attorney is an officer of the court and he should never file a lawsuit without confidence that it has a reasonable basis in fact and is well grounded in law. *Kunstler*, 914 F.2d at 516. A party's legal position is unwarranted and frivolous if it is "clear that the position has no chance of success under existing law and there is no reasonable argument advanced to extend, modify, or reverse the law as it stands." *In re Fromal,* 151 B.R. 730, 733 (E.D.Va. 1993). "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted." Advisory Committee Notes to 1983 Amendment to Federal Rule of Civil Procedure 11. Factors the court should consider when determining reasonableness of investigation by the attorney into the law and facts underlying pleadings include the amount of time available, reliance upon client for factual information and plausibility of law utilized in pleading. *In re Tamojira, Inc.*, 197 B.R. 815 (Bankr. E.D. Va. 1995).

Once the court determines that Bankruptcy Rule 9011 has been violated, the

court has discretion to determine an appropriate sanction.  Bankruptcy Rule 9011(c)(2) provides

that the sanction shall be limited to "what is sufficient to deter repetition of such conduct or

comparable conduct by others similarly situated."  The court has a variety of possible sanctions

to impose for violations, such as issuing an admonition, reprimand or censure; requiring

participation in seminars or other educational programs; ordering a fine payable to the court; or

referring the matter to disciplinary authorities.  *See* 1993 Advisory Committee Note to Federal

Rule of Civil Procedure 11.  Factors the court should consider in deciding whether to impose a

sanction include:  whether the improper conduct was willful or negligent; whether it was part of

a pattern of activity or an isolated event; whether it infected the entire pleading or only one

particular count or defense; whether the person has engaged in similar conduct in other

litigation; whether it was intended to injure; what effect it had on the litigation process in time or

expense; and whether the responsible person is trained in the law. *Id.*

       An attorney's standard of conduct is measured by an objective standard, although

subjective factors may be considered by the Court in evaluating the nature and seriousness of the

subject attorney's conduct.  Collier states as follows:  "The courts have interpreted Civil Rule 11

. . . as establishing an objective standard of conduct for litigants and attorneys.  Although the

subjective *beliefs* of a person who signed or advocated a document are irrelevant in determining

whether the certification requirements of the rule have been violated, subjective *factors* may be

considered, since 'Rule 11 sanctions are based on "an objective standard of reasonableness *under*

*the circumstances*.'" 10 *Collier on Bankruptcy* ¶ 9011.04[3], citing *Martin v. Brown,* 63 F.3d

1252, 1264 (3d Cir. 1995).  These Rules establish objective criteria for measuring an attorney's

compliance with them which are not trumped by the attorney's professed desire simply to

accomplish the desired objectives of the client.

> [I]t is important to reaffirm, on a general basis, the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process.  Each lawyer undoubtedly has an important duty of confidentiality to his client and must surely advocate his client's position vigorously, but only if it is truth which the client seeks to advance.  The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end.  It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit.

*U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 457 - 458 (4th Cir. 1993).

The Court believes that the claims made in the *Perkins* adversary proceeding are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and lacked "evidentiary support" within the meaning of Bankruptcy Rule 9011(b)(2) and (b)(3) for the following reasons: (1)  The adversary proceeding was not factually supported on its face because the total aggregate amount of mortgage loan payments made pursuant to the Plan to First Union, even if they had all been applied directly to principal and interest had been disregarded entirely, still would have been substantially less than the unpaid balance of the loan acknowledged in the Plan and the bankruptcy schedules; (2)  Even if the language quoted in the Complaint had been all of the relevant language in the Plan concerning the mortgage loan on the 8th Street property, such language on its face said nothing to the effect that the payments to be made under the Plan would satisfy the loan indebtedness or otherwise affect First Union's post-bankruptcy claim for the remaining balance of its loan; and (3)  The critical language in the confirmed Plan to the effect that First Union would retain its lien to the extent that its loan was not satisfied, which was

omitted from the allegations made in the Complaint, in light of the fact that the payments made pursuant to the Plan provisions during the term of the Plan would not even come close to paying just the principal petition date balance of the loan, should have made it clear even to an inexperienced bankruptcy attorney, much more so for a very experienced one, that the relief being sought in the adversary proceeding was directly at odds with the provisions of the confirmed Plan, an omission which appears to have resulted from either gross carelessness on counsel's part or an intent to mislead the defendant and the Court if the allegations in the Complaint were accepted on their face as true without going back and checking their accuracy and completeness against the actual language of the Plan. Obviously in either event this Court has a right to expect more of counsel practicing before it.

The Court believes that the claims made in the *Bousman* adversary proceeding are also not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" within the meaning of Bankruptcy Rule 9011(b)(2), and that the Motion to Re-Open in the *Bousman* bankruptcy case did not have "evidentiary support" within the meaning of section (b)(3) of such Rule, for the following reasons: (1)  Counsel obtained the reopening of the *Bousman* bankruptcy case upon the false representation to the Court that the Central Fidelity judgment had been obtained "while they were debtors in this case", which, had it been true, would likely have made such judgment void as having been obtained in violation of the automatic stay, but which in fact was not true as the judgment in question, according to the allegations contained in the later filed adversary proceeding, had been obtained prior to the bankruptcy filing, indeed within ninety days prior to the filing of an earlier bankruptcy case (the 1997 case) which was subsequently dismissed; (2)

18

There is no proper legal basis for asserting that an allegedly preferential judgment obtained within ninety days prior to the filing of a bankruptcy petition was "void" when the case commenced by such petition was later dismissed because even if such judgment lien had been avoided in such case, which did not occur here, its validity would have been reinstated by 11 U.S.C. § 349(b)(1); (3) Even if the Central Fidelity judgment had been obtained within ninety days prior to the reopened bankruptcy case rather than the dismissed case which preceded it, there is no proper legal basis for asserting that such judgment is "void" as opposed to, at most, being potentially "avoidable" by means of an adversary proceeding brought pursuant to the provisions of 11 U.S.C. §§ 547 and 550; and (4) Even if the Central Fidelity judgment had been avoidable as a preferential transfer under 11 U.S.C. § 547, it could have been challenged by a bankruptcy debtor only to the extent that the debtor could have exempted such property if such transfer had not occurred. 11 U.S.C. § 522(h). In the *Bousman* case the debtors claimed no exemption at all in their equity in the Botetourt County property and the amount of their equity according to their own bankruptcy schedules exceeded any amount they could have properly claimed as exempt in such property under applicable Virginia law. In short, there simply was no reasonable legal basis for the relief sought in the adversary proceeding.

The judges of this Court agree that it is vitally important for the Respondent in particular and more generally for all counsel appearing here to understand quite clearly that the expected standard of practice for attorneys filing pleadings and advocating positions in this Court is not determined by the particular relief which the attorney's client, whether that be a debtor or a creditor, might desire to obtain, or by the possibility of obtaining a default judgment for some relief which clearly would not be available if some defense were made to the motion,

19

complaint or other pleading, but by the objective standards contained in Bankruptcy Rule

9011(b) and the Virginia Rules of Professional Conduct or other comparable rules of the

jurisdiction(s) in which such attorney is admitted to practice.  As relevant to the particular

circumstances of the present proceeding, these specifically include the Preamble (a lawyer's

responsibilities), Rule 1.1 (competence), Rule 1.16 (declining or terminating representation),

Rule 3.1 (meritorious claims and contentions), Rule 3.3 (candor toward tribunal), Rule 3.4

(fairness to opposing party and counsel), Rule 4.1 (truthfulness in statements to others), and Rule

4.4 (respect for rights of third persons).  The language of the Court of Appeals for the Fourth

Circuit in the *Shaffer Equipment Co.* case quoted above establishes that the attorney's

professional and ethical responsibilities as a member of the bar and an officer of the court trump

his duty of vigorous advocacy on behalf of his or her client, not vice-versa.  The undersigned

judges further intend by this opinion to state their view that it is an "improper purpose" within

the scope of Bankruptcy Rule 9011(b)(1) to file a pleading in the bankruptcy court which

objectively lacks reasonable legal or factual merit for the purpose of persuading the counter-

party that such pleading does have merit and thereby obtaining either a default judgment for

relief or some advantageous settlement thereof by reason of the time, expense and trouble such

counter-party would be obliged to suffer in order to offer a defense to such pleading.  They have

jointly concluded, based on the facts and applicable law noted in this opinion, their individual

experiences with the Respondent in his practice in this Court over a period of years and after

considering the representations and arguments made by him in his Response to the Show Cause

Order, that an admonition to him accompanied by requirements that he take an appropriate

professional responsibility course and complete a personal study and certification to the Court of

Rule 9011(b), the case authority interpreting and applying the same, and pertinent Rules of

Professional Conduct found in Part 6 of the Rules of the Supreme Court of Virginia, are likely to

be sufficient to deter repetition of the conduct noted in this opinion or comparable conduct

within the meaning of Bankruptcy Rule 9011(c)(2).  It is not their intent to chill advocacy which

is vigorous or innovative or both, so long as it is supported both factually and by good faith legal

argument within the fair meaning of the Rule, and is not advanced in a manner which is

reasonably likely to be misleading either to the other parties affected thereby or to the Court.

Finally, the undersigned judges of this Court intend to put the Respondent on specific notice that

any future material violation by him of Bankruptcy Rule 9011(b) or the Virginia Rules of

Professional Conduct, Part 6 of the Rules of the Supreme Court of Virginia, in connection with

any pleading filed or appearance made in this Court which occurs after this date will be

considered by this Court as prima facie cause for the suspension or termination of his right to

practice as a member of its bar.[4]

---

[4] The sanction announced in this decision is imposed in connection with the
Respondent's prior history with the Court and the conduct specifically alleged in the Show
Cause Order and is intended to deter the Respondent from a repetition of such conduct.  It is not
intended to immunize him from any other discipline for any other conduct which has occurred
prior to now but which was not alleged in the Show Cause Order.

CONCLUSION

By a separate order, the Court will impose the sanction determined in the

preceding paragraph.

This 31st day of March, 2008.


_____
ROSS W. KRUMM, CHIEF  JUDGE


_____
WILLIAM E. ANDERSON, JUDGE


_____
WILLIAM F. STONE, JR., JUDGE


22